

**FILED**
JAN 08 2007

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | | |
|---|---|---|---|
| ONTARIO LEWIS; ELMER WEST; | * | CIV 06-4163 | CIV 06-4164 |
| GARY H. MILLER; DAVID A., | * | CIV 06-4170 | CIV 06-4171 |
| BURLING; EDDIE DEAN COLE; | * | CIV 06-4173 | CIV 06-4175 |
| PRESTON GATUS; JEFFREY | * | CIV 06-4181 | CIV 06-4182 |
| BARNHART; MICHAEL PARVIN; | * | CIV 06-4190 | CIV 06-4194 |
| KENNETH HOWARD; PEDRO | * | CIV 06-4198 | CIV 06-4199 |
| RODELA; MARK STEVENS; DEAN | * | CIV 06-4201 | CIV 06-4202 |
| BERA; SAM OPARE-ADDO; JOHN J. | * | CIV 06-4204 | CIV 06-4205 |
| PEACHER; WILLIAM H. HARRISON; | * | CIV 06-4206 | CIV 06-4207 |
| DEAN A. KIRCHERT; JEFFREY A. | * | CIV 06-4209 | CIV 06-4210 |
| NEYENS; FERNANDO ANTONIO | * | CIV 06-4213 | CIV 06-4215 |
| LOVATO; STEVEN STANDS; DAVID A. | * | CIV 06-4217 | CIV 06-4218 |
| LAUER, SR.; ESTEBAN RODRIGUEZ; | * | CIV 06-4220 | CIV 06-4223 |
| ERIC GUTSCHMIDT; CHARLES D. | * | CIV 06-4224 | CIV 06-4225 |
| SAVAGE; NICHOLAS R. JENSEN; | * | CIV 06-4226 | CIV 06-4230 |
| CHRISTOPHER RHODES; BRIAN LEE | * | CIV 06-4233 | CIV 06-4235 |
| LANGSCHWAGER; JOHN W. SHRIVER; | * | CIV 06-4236 | CIV 06-4237 |
| NICHOLAS M. BROMEMSCHENKEL; | * | CIV 06-4238 | CIV 06-4240 |
| LEONARD FAZIO; DAVID R. | * | CIV 06-4241 | CIV 06-4245 |
| BOETTGER; FRANCIS SCHRAM; | * | CIV 06-4246 | CIV 06-4247 |
| CURTIS DeWITT; DANIEL LEE WARN; | * | CIV 06-4248 | CIV 06-4249 |
| COREY JAMES BAKER; FELIX | * | CIV 06-4250 | CIV 06-4251 |
| BACCAM; KEVIN NOVOSEL; | * | CIV 06-4254 | CIV 06-4255 |
| BOYD J. PRICE; RODNEY ANDERSON; | * | CIV 06-4257 | CIV 06-4258 |
| JAMES LAVERN PENISKA; | * | CIV 06-4260 | CIV 06-4269 |
| SHAMOGA J. SEMOUR; SALVADOR | * | CIV 06-4271 | |
| ZAMORA; SHAWN GORDON; | * | | |
| MERLE SEEKING LAND; and BRIAN | * | | |
| TOLBERT; DARRELL GILSON; | * | | |
| MATTHEW RITCHART; JON DAVID | * | | |
| BROOKS; JEFFREY A. SPAENI; | * | | |
| LYLE DUANE OBERHOLTZ; MARK A. | * | | |
| HANSEN; and COREY STEELS, | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| Petitioners, | * | |
| | * | |
| -vs- | * | |
| | * | |
| J.D. WHITEHEAD, Warden, | * | |

| | |
|---|---|
| Yankton Prison Camp, | * |
| | * |
| Respondent. | * |
| | * |

\*\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Petitioner, Ontario Lewis, an inmate at the Federal Prison Camp in Yankton, South Dakota, petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2241. Since numerous petitions were filed raising common questions of law and fact, this Court, on its own motion, consolidated Lewis' case with that of other inmates who have filed 28 U.S.C. § 2241 petitions raising the same issues. The Petitioners are all confined at the Federal Prison Camp in Yankton, South Dakota. The claim advanced by the Petitioners is that Respondent, Warden Whitehead, by refusing to allow inmates to be eligible for RRC (halfway house placement) beyond 180 days in the absence of "extraordinary justification" is acting contrary to the Eighth Circuit Court of Appeals' rulings in *Fults v. Sanders,* 442 F.3d 1088 (8th Cir. 2006), and *Elwood v. Jeter,* 386 F.3d 842 (8th Cir. 2004). Also, Petitioners contend that the requirement of "extraordinary justification" is arbitrary and capricious and constitutes an abuse of discretion.

## BUREAU OF PRISONS' PLACEMENT POLICIES

Prior to December of 2002, the Bureau of Prisons had a policy of allowing prisoners to serve their last six months of incarceration in a community confinement center regardless of what percent of the sentence this last six months comprised. In December of 2002, however, the Office of Legal Counsel of the U.S. Department of Justice, in response to an inquiry by the Bureau of Prisons, issued a Memorandum which concluded that the Bureau of Prisons' community confinement center placement policy was illegal because it was inconsistent with the requirements of 18 U.S.C. § 3621(b)[1] and 18 U.S.C. § 3624(c)[2]. The Memorandum from the Office of Legal

---

[1] 18 U.S.C. § 3621(b) provides:
> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

2

Counsel further concluded that the Bureau of Prisons had no authority to transfer a prisoner to a community confinement center, except for the lesser of the last ten percent of the sentence or the last six months of the sentence. The United States Attorney General's Office subsequently adopted the Office of Legal Counsel's position on placement to a community confinement center. On December 20, 2002, the Bureau of Prisons instituted a policy that inmates could be placed in community confinement centers only for the last ten percent of their terms, to be capped at six months. *See Elwood v. Jeter*, 386 F.3d 842, 844-45 (8th Cir.2004).

The Bureau of Prisons' 2002 placement policy was challenged in *Elwood v. Jeter*, 386 F.3d 842 (8th Cir.2004). The Eighth Circuit in concluding that the Bureau of Prisons has the

---

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

[2] 18 U.S.C.A. § 3624(c) provides:
> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

discretion to transfer prisoners to community confinement centers at any time during their incarceration, explained its holding as follows:

> We hold, on the facts of this case, in which both parties agree that CCCs are places of imprisonment for the purposes of 18 U.S.C. § 3621(b), that § 3621(b) gives the BOP the discretion to transfer prisoners to CCCs at any time during their incarceration. Further, the BOP is required to place prisoners in "conditions that will afford [them] a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community" during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable. <u>This duty shall not extend beyond the last six months of the prisoner's sentence.</u>

*Elwood v. Jeter,* 386 F.3d at 847(emphasis added).

In February of 2005, the Bureau of Prisons put into place new regulations which stated that the Bureau of Prisons was engaging in a "categorical exercise of discretion" with regard to designating inmates to community confinement centers. *Fults v. Sanders,* 442 F.3d 1088, 1090 (8th Cir. 2006). One of these regulations, 28 C.F.R. § 570.21,[3] limited an inmate's pre-release placement to ten percent of his sentence. The Eighth Circuit Court of Appeals in *Fults v. Sanders,* held that the Bureau of Prisons' regulation conflicted with 18 U.S.C. § 3621(b) "by excluding an entire class of inmates -those not serving the final ten percent of their sentences- from the opportunity to be transferred to a CCC," and that the regulation was invalid. *Id.* at 1092.

Subsequent to the issuance of the *Fults v. Sanders* decision, the Federal Prison Camp in Yankton, South Dakota, once again utilized BOP Program Statement 7310.04, <u>Community</u>

---

[3]28 C.F.R. § 570.21 stated:

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program) (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c)).

4

<u>Corrections Center (CCC) Utilization and Transfer Procedure</u>, dated December 16, 1998, as the policy for making referrals of placement to what is now known as a Residential Re-entry Center (RRC or "halfway house"). Program Statement 7310.04 was the Bureau of Prisons' policy prior to 2002.

Section 5 of Program Statement 7310.04 states in part: "[T]he Bureau is not restricted by § 3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than six months, if appropriate." Section 8.c. of Program Statement 7310.04 states in part: "A final and specific release preparation plan, including a decision as to CCC referral, is normally established at a team meeting no later that 11 to 13 months before an inmate's projected release date." Section 9.a.(1) of Program Statement 7310.04 states:

> An inmate may be referred up to 180 days, with placement [in a CCC] beyond 180 days highly unusual, and only possible with extraordinary justification. In such circumstances, the Warden shall contact the Regional Director for approval and the Chief USPO in the inmate's sentencing district to determine whether the sentencing judge objects to such placement.

In accordance with Section 9.a.(1), Warden Whitehead responded to inmates seeking RRC placement beyond 180 days by stating that "RRC placements beyond 180 days would be highly unusual and only possible with extraordinary justification." Warden Whitehead further advised that the particular inmate had not provided information which would indicate extraordinary justification for the placement beyond 180 days.

**WHETHER THE REFUSAL TO ALLOW INMATES TO BE ELIGIBLE FOR RRC (HALFWAY HOUSE PLACEMENT) BEYOND 180 DAYS IN THE ABSENCE OF "EXTRAORDINARY JUSTIFICATION" IS CONTRARY TO THE RULINGS IN *FULTS V. SANDERS* AND *ELWOOD V. JETER*?**

Under 18 U.S.C. § 3624(c) the Bureau of Prisons has a qualified obligation to ensure placement under pre-release conditions except where no such placement is practicable. The duty to place a prisoner in conditions affording the prisoner a reasonable opportunity to prepare for re-entry in to the community does not extend beyond the last six months of a prisoner's sentence. *See Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir.2004). Program Statement 7310.04, by

5

allowing for placement in a halfway house beyond 180 days, is not in violation of, but rather is in conformity with the Eighth Circuit's holding that the Bureau of Prisons has the discretion to transfer prisoners to community confinement centers at any time during their incarceration. *See Elwood v. Jeter,* 386 F.3d at 847. Furthermore, there has been no showing that the Bureau of Prisons has refused or failed to consider the factors in 18 U.S.C. § 3621(b) in making individualized determinations as to who is placed in a halfway house within or beyond 180 days.[4]

The Supreme Court has recognized that "'[e]ven if a statutory scheme requires individualized determinations,'" ... "'the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.'" *Lopez v. Davis,* 531 U.S. 230, 244 (2001)(quoting *American Hospital Ass'n v. NLRB,* 499 U.S. 606, 612 (1991)). This Court does not conclude that the requirement of "extraordinary justification" for halfway house placement beyond 180 days is arbitrary and capricious or that it constitutes an abuse of discretion.

Also, this Court agrees with Judge Magnuson from the United States District Court in Minnesota in concluding that no authority has been presented which "requires that the BOP conduct its final halfway house eligibility review, or immediately transfer a prisoner to a halfway house, on demand by the prisoner." *See Fisher v. Morrison,* 2006 WL 1716135, slip opinion at 2 (D. Minn. June 20, 2006), *appeal docketed,* No. 06-2775 (8th Cir. June 30, 2006)(citing *Elwood v. Jeter,* 386 F.3d at 847). The Bureau of Prisons has not acted contrary to law in considering inmates for release to a halfway house 11 to 13 months prior to projected release and in restricting halfway house placements beyond 180 days to those cases demonstrating extraordinary justification. Accordingly,

IT IS ORDERED:

1. That the relief requested in the petitions of this consolidated action is denied insofar as the requested relief pertains to the Bureau of Prisons' policies and actions of

---

[4] Although Petitioner, David A. Lauer, Sr., in his individual petition in Civ. 06-4210, and in his statement of reasons for halfway house placement (Doc. 37), has set forth unusual health issues, Lauer began serving a 70-month sentence in January of 2006, and this Court cannot conclude that the Bureau of Prisons in declining to place Lauer in a halfway house at this time has violated 18 U.S.C.A. § 3624(c) or other applicable law.

considering inmates for release to a halfway house 11 to 13 months prior to projected release and in restricting halfway house placements beyond 180 days to those cases demonstrating extraordinary justification; and

2. That to the extent that any individual petition considered in this consolidated action raises any question beyond that contemplated in the previous paragraph, those issues will be decided in a separate decision.

Dated this 8th day of January, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
 (SEAL)    DEPUTY